.Mr. Justice Cox
delivered the opinion of the Court:
This case has been tried twice and is here now for a second time on a bill of exceptions taken during the progress of the second trial.
Suit was commenced upon the following state of facts :
On May 16,1884, the- plaintiff became possessed for value •of two certain checks drawn upon the defendant bank by George H. Levis to the order of M. D. Helm, and by him indorsed, each for the sum of $1,000, one bearing date on May 16, which was Friday, and the other on May 18, which was Sunday. On May 16, the plaintiff went to the defendant bank after 3 o’clock, when the bank was closed, but was admitted, however, by the messenger of the bank and presented the checks to the paying teller, Mr. Drinkard, who was there, not engaged at his desk, but probably closing up the business of the day ; he. stated to Mr.'Drinkard that he was desirous of leaving town on account of the illness of his nephew in New York, and'thereupon the said Drinkard paid the check dated on that day. for $1,000; Drinkard called attention, however, to the fact that the other check was dated on the- 18th, which was Sunday, and told plaintiff that that was only presentable and payable on-Monday, the 19th. Plaintiff told the paying teller that he would not be here on that day, and thereupon, as he testified, Mr. Drinkard told him that he would retain the check and it would be carried to plaintiff’s- credit, and plaintiff could check against it, and thereupon Drinkard requested *250 the plaintiff to write his name in. what is known as the signature book of the defendant, and plaintiff did so write his name.
The plaintiff then goes on to testify that a week after-wards, he called at the bank and was about to check out some of the money when he was presented with this check and a protest, and demand was made of him for two dollars and some cents, the costs of the protest. The plaintiff then offered in evidence the notary’s certificate which stated among other things that the check liad been protested at the request of the bank, and he also proved by officers of the bank, that on the morning of Monday the 19th there was money enough to pay the check, but that the money was all checked out in the course of the day except some $1,500' which was retained by the bank, really, as it turned out, to meet two drafts, on New York which the bank had cashed for Levis, but which were not paid in New York. Some additional evidence was offered as to the custom of the bank in cases of this sort.
Thereupon the plaintiff rested. No evidence was offered for the defense.
On the second trial, substantially the same proof was offered on the part of the plaintiff. Some additional proof was offered on the -part of the defense, as to. what the usual course of business was, and also, that after 3 o’clock p. m. on Monday, the 19th, the teller and the notary of the bank went to the desk of the cashier at the rear of the bank, and Mr. Drinkard showed him the check and asked him what he had better do with it; that the cashier suggested to the teller that, to save the rights of all the parties to it, he had better hand it to the notary. This was done to hold the indorser of the check. The notary testified that notes and checks to be protesed for the bank are given to him by the paying teller and receiving teller of the bank; that Drinkard was the paying teller, and Drinkard paid him his fee for protesting this- check, as he did for all protests *251 for the bank of similar paper, and that all protests for the bank were made at the request of the cashier.
It may, perhaps, be not unsafe to state, as a general rule,, that whoever undertakes to deal in a manner outside of the usual course of business and especially so to deal with commercial paper, does it at his own risk. The books furnish illustrations of this, and the present case supplies a. new one.
The plaintiff was the holder of two checks drawn by George H. Levis in favor of and indorsed by M. D. Helm, each for $1,000, one dated May 16, and the other May 18, 1884. May 18 was Suiukyy; so that the check was really payable onjMonday, the 19th.
He presented himself with these checks at the defendant’s bank on May 16, after 3 o’clock p. m., when the bank was closed for business, and all its officers had left except the paying teller and the watchman, and the former was not at liis desk for the transaction of new business, but was presumably there simply.to settle up his cash and close up the business of the day before leaving.
The plaintiff was not á customer .of the bank, and had no right to ask favors, and could not of right ask the payment of his check at that hour. But, for his accommodation and because he desired to leave town, the teller paid the check of that date. The post-dated check which was not presentable until the following Monday was simply refused payment for that reason. And here all the rights and duties of the teller in regard thereto ceased, and according to the usual course of business, it was the holder’s duty to present the check in person or by agent on Monday morning, when, according to the evidence, it would have been paid. But instead of this he relied upon a gratuitous- and entirely irregular undertaking of the teller who promised to hold the check and see that it was paid on Monday morning by having the amount of it credited to the plaintiff and to have an account opened with him on the book,. *252 which, of course, would have to be done by the bookkeeper, another subordinate officer, not under the teller’s control, .so that the plaintiff would thus become a customer of the bank and could check against the deposit.
This undertaking the teller neglected to perform, and the first question is whether, in assuming it, he acted as the agent of the plaintiff, so that the consequences of his neglect must fall on the latter, or he acted as the agent of the bank, binding them to pay the check.
For all the purposes of this inquiry, the check may as well have been dated a week as a day ahead. A check is payable immediately on the day of its date. If it is dated ahead, or, as it is called, post-dated, it should, in due course of business, be presented by the holder on the day of its date. It is payable only on that da}*- or after. The duty of the banker is simply to pay his customers’ checks over the counter when presented on or after their date. It is no pai’t of his business to receive post-dated checks before they are payable, and to engage to present them' to himself, or, in other words, to consider them as presented to him for payment on the day when they are payable. Still less is it his business to engage in advance to pay checks which are post-dated, as before mentioned. If he should do so, it would be at his own risk. For he could not refuse to pay other checks that might be presented in the meantime, ■although such payments would leave nothing to meet the post-dated checks. The rule is thus stated in Morse on Banking, 636 : A
“ But it is the bank’s own risk if it pay before that day. ■Such a payment is irregular, and circumstances may easily ■supervene under which the bank will be held to pay the amount again, or to restore it to the credit of the drawer if it has debited him with it, which, however, it has no right to do. For it is unquestionable that in the interval between such irregular payment and the day of the date when the payment could be properly made, the amount ought still to *253 be left standing to the credit of the drawer. The bank has no right to charge him with the disbursement till the time comes when the disbursement could be properly made on his account. His check is no order till it has matured. So, if in the interval he continues to draw checks, the bank must continue to honor them upon presentment so long as his account, without decrease by the debit of this item, is sufficient to meet them until the day of the date arrives. When that day does arrive the bank may, of course, appropriate the sum it has paid out. But, if then the intervening drafts have so diminished the depositor’s balance that the remainder is not enough to meet the amount of the post-dated check, the deficiency must be the loss of the bank.”
This is quite different from certifying checks which are presented after they are payable, which is sometimes done in order that they may be remitted elsewhere. For the check is payable at once and is charged up to the customer.
But as to a post-dated check, the law charges the banker with no duty than that of paying it ivhen presented on or after the day of its date.'
There have been cases in which, when a check was presented and there were no funds to meet it, the banker has retained it and promised to apply the first money deposited to the check, as in the case of Kilsby -as. Williams, 5 B. & A., 815, cited in argument. But this is entirely outside the usual course of business, and certainly no subordinate officer of a bank could bind his employer by such an agreement.
It must be very clear that Drinkard exceeded his authority. The duties and authority of the several officers of a bank are tolerably well defined by law. The teller’s authority is very limited, and the paying teller has almost, the sole duty of verifying the checks of customers and paying them over the counter when -presented. He has no authority to receive deposits, and if he does so it is as the *254 agent of the customer, and it is his risk until they reach the hands of the receiving teller. See 5 Sanford, infra, and Morse on Banking, Sec. 174 a.
In this case the undertaking of Drinkard was, in several respects, entirely outside of his sphere of duty, and, therefore, it must be regarded as his personal undertaking, and it amounted to an engagement by him to present the check on the Monday following and collect it for the plaintiff by having it placed to the latter’s credit. This made him the plaintiff’s agent for this purpose, for the simple reason that he could not so undertake as the officer or agent of the bank.
An instructive and somewhat analogous case on this subject is that of Thatcher vs. Bank of State of New York., 5 Sandf., 122.
In that case the party having a note to pay at the bank in question deposited the amount with the paying, teller upon his promise to appfly it when the note should be presented.
“To avoid the trouble of waiting with the mone3 at the bank counter for the bill to be brought in for payment these parties resorted to the expedient of asking the pa3nng teller to take the amount they had brought, and when the bill came in to hand it to the holder. He sometimes assented as a favor to them. There was no intention or expectation that the money should go .into the hands of the bank, or be mingled with its funds. It was handed to the paying teller because from his position in the bank the bill would necessarily be presented to him for pament, and if he would take the money and retain it till the bill came in would save the time and attendance of the agent of the drawer and acceptor. The same expedient has been adopted in reference to bills payable at another bank as shown by the evidence, and it may be general in this city; but it cannot alter the relation of the parties in the transaction. The paying teller in such cases becomes the agent of the *255 parties who leave the money with him and the bank is not responsible for his conduct in regard to it.”
The failure of Drinkard then to have the check entered to the plaintiff’s credit was the neglect of the latter’s agent and not that of the bank.
It appears that Drinkard, about 3 o’clock on Monday, the 19th of May, bethought him of this check and brought it to the attention of the cashier. Up to this time, as far as appears from the evidence, the bank liad done nothing, and it does not appear that any officer of the bank except Drinkard, who was, as we have shown, the plaintiff’s agent in this matter, had knowledge of the existence of the check.
The most that can be said in behalf of the plaintiff’s claim at this point in the proceedings is, that the check may be considered as having been presented at this time. And complaint is made that it was then paid, when it appears that the sum of about $1,500 was then to the credit of Levis, the drawee.
But it is to be remembered that the plaintiff had no. claim upon the bank. There is no privity between the holder of a check and the bank, the latter’s obligation is to its customer and not to the holder of the check. Had Levis any right to have this check paid? The evidence was that the bank had cashed two drafts on New York for Levis, amounting to $1,500, one of which was payable on that day and the other apparently before, and they were actually advised on that day after 3 o’clock of the nonpayment'of the former. They had the right to retain the $1,500 then on deposit to meet these claims on Levis on these drafts and were under no obligations to him to pay it out on his check. See Morse on Banking, 750, Sec. 459.
And in any event, it was Levis and not the plaintiff, who had the right to make complaint of non-payment.
But it is said that the cashier handed the check to a notary to be protested for non-payment, and this is relied *256 on as proof that the bank treated the note as being in its possession for collection and thereby ratified the agreement of the teller that it should be collected by being placed to his credit. On the first trial nothing appeared except this fact, the defendant offering no evidence.
Now, whatever significance this act of the cashier had, or whatever inference might be drawn'from it unexplained, it is open to explanation, and it is competent for him to show its object and intent, and the circumstances under which it was done. It is to be remembered that the check was drawn by Levis in favor of and endorsed by Helm, and in order that the plaintiff might hold Helm responsible as indorsee, it was necessary that the notice of non-payment should be given to him, which is done usually by the notary who protests the paper. The testimony of the cashier, on the second trial, is, that he suggested this course, not for the benefit of the bank but for that of the holder, and to save his recourse against the indorser of the check. If this explanation be correct, it is difficult to see how the bank could be committed by it to anything, and the act of the cashier loses all significance. Besides it is not reasonable to draw inferences from a single circumstance in the conduct of the cashier without looking at the whole of it.
The teller’s engagement, as we have seen, was, that the check would be paid on Monday. If anything was ratified it was this. But with what propriety can the mere suggestion of the cashier, to have the check protested, be held to ratify the promise that it should be paid, when at that time there was no available deposit to pay it from, and in fact the cashier did not pay it, but impliedly declined to do so, and especially when the suggestion of protest can be ascribed to a very different motive, viz., a desire to save the holder’s recourse against his indorser ?
Upon the whole evidence, including the defendant’s, if taken as true, the true conclusion would seem to be that the bank is not liable in this action.
*257 And this leads us to consider how far this conclusion is consistent with the rulings at the last trial and our own former opinion in this court.
The certificate of protest of the notary was offered in evidence, which stated the presentment of the check for payment at the request of the Second National Bank. This was objected to on the ground that the Revised Statutes do not make this certificate evidence as to anjdhing except the dem&nd and subsequent proceedings, and it is, therefore, not evidence that the protest was made at the request of the defendant. When the case was before this court the first time we said: “The notary’s certificate is evidence of the facts stated in it, and it thereby appears the check was protested at the request of the bank. It follows that the bank treated the check as being in its possession for the collection, and thus recognized and ratified the paying teller’s act of receiving it. For all the purposes of the transaction, it adopted him as a receiving teller, and the check must be held to have been originally received by the bank for collection. The bank was bound, therefore, by the paying teller’s undertaking to place the check to the plaintiff’s credit.”
That is to say, we thought the notary’s certificate evidence that the bank delivered the check to him for protest, and this fact again we thought to be evidence from which it was fair to infer that the bank- had received the check from the paying teller on the terms on which the plaintiff had delivered it to him — that it should be paid on Monday morning.
It is now claimed that this was error. However that may be, we must consider it the law of this particular case; We cannot reverse the trial justice for following the law, ad stated by us. But, properly interpreted, we do not see that the opinion so expressed can operate to the prejudice of either party.
We did not intend to say that the notary’s certificate *258 was more than prima facie evidence, for the statute expressly declares it to be only prima facie. Nor did we mean to say that the fact of the defendant’s delivery of the check to the notary was more than prima fade evidence of the bank’s adoption of the teller’s undertaking.
But on our former review of this case this was all the evidence before us, the defendant not having attempted to contradict or explain it away.
On the second trial, however, which we are now reviewing, in the light of evidence tending to show that the check only came to the knowledge of the cashier after 3 o’clock on Monday, the 19th, when there were no funds of Levis’ to meet it, and that the cashier merely requested the protest for the benefit of the parties to the paper, and did not in fact assent to the payment of it, it was proper for the defendant to ask an instruction in the following terms, viz: “If the jury believes from the evidence that Mr. Drinkard, the paying teller of the bank, after 3 o’clock,- on May 19, when there was no money to Levis’ credit, as shown by the proof, in company with General Ballock, the notary, consulted Mr. Swain, the cashier, as to whether the check should be protested, and that the cashier suggested to him that in order to save the rights of the parties to the check, he had better have it protested, and Drinkard handed the check to the notary, who protested the same, then the same is not evidence of a ratification by the bank of the act of Drinkard and will not enable the plaintiff to recover.”
We think it was error to refuse this instruction. And another instruction asked for the defendant -was equally proper, viz., “that upon the evidence in the case, Drinkard, the paying teller, in receiving the check, is to be considered the agent of the plaintiff and not of the bank.”
In consequence of the refusal of these instructions, we think the plaintiff is entitled to a new trial.

Judgment reversed and a new trial granted.